## TOWN OF BRISTOL vs. BRISTOL AND WARREN WATER WORKS.

PROVIDENCE—JULY 27, 1901.

PRESENT : Stiness, C. J., Tillinghast and Douglas, JJ.

(1)  *Water-works.   Municipal Corporations.   Good-Will.   Monopoly.*

The pleadings in a suit in equity, brought by a municipal corporation against a corporation supplying the former with water under a contract made with the latter's assignor, raised the issues whether the whole or what part of defendant's system could be conveyed to the town as reasonably necessary and useful for supplying water to the town and its inhabitants, and what would be a fair and reasonable price for the same. On exceptions to the report of a master :—

*Held,* that it was error to allow any sum for the good-will of the plant. As the defendant had an exclusive franchise, it had no good-will, for its customers were retained by compulsion, not by voluntary choice.

(2)  *Contracts.   Non-performance.   Damages.*

*Held,* further, that, although by the contract with the defendant's assignor the town was not obliged to buy less than a complete system, yet if the defendant could not sell a complete system, but had portions of a system available to the town, by the offer of the bill and the acceptance of the answer the town was bound to take and pay a fair price for that ; hence there was no place for damages for non-performance of the contract in the computation of the amount to be paid.

(3)  *Water-works.   Reservoirs.*

*Held,* further, that the fact that the reservoir which supplied the water-works also supplied the water-works of another town did not render the system incomplete, as the supply was ample for the requirements of both, but that the complainant town was not compelled, either under the contract or the offer in the bill, to purchase the whole water-supply, which was beyond its need, but that the case would be sent to a master to apportion the reservoirs and water-supply.

(4)  *Franchises.   Damages.*

By the contract with defendant's assignor, the town granted him the exclusive right to use the public streets for the purpose of laying water-pipes for the period of fifty years for the purpose of selling water therefrom and the use of all water-pipes then owned by the town for said term of fifty years, or until the town should avail itself of the privilege reserved to buy said water-works :—

*Held,* that the exclusive right was given for fifty years ; the right to use the town pipes for fifty years, or until the town should elect to purchase.

*Held,* further, that in estimating the value of the plant upon its purchase by the town under the option given the latter by the terms of the contract, the franchise given defendant must be considered.

BILL IN EQUITY.   For a full statement of bill and previous history of case, see 19 R. I. 413.   Heard on exceptions to report of master taken by both complainant and defendant, and certain exceptions sustained.

DOUGLAS, J.   The town of Bristol, between which and George H. Norman a contract was made, January 30, 1882, for the building of water-works for the supply of water to said town and its inhabitants, which contract was afterwards assigned to the Bristol & Warren Water Works, brings this bill against the said corporation for the enforcement of an option given to said town by said contract to purchase and acquire the water-works constructed under said contract with the rights and appurtenances belonging to the same.

Upon a hearing of the case upon demurrer, Norman, who had originally been made a party defendant, was dismissed, and certain objections raised by the present defendant were overruled, and it was decided that the town has the right to exercise the option in question and has sufficiently claimed its privilege to purchase, and that this court has jurisdiction in the premises to fix the value of the property and to order the conveyance thereof.   19 R. I. 413.

It is alleged in the bill that Norman agreed to construct a complete system of water-works for the supply of water to the town of Bristol, and that neither he nor his successor had fulfilled this agreement; but it is admitted that the defendants did construct and the defendant corporation has in operation a system of water-works from which the town of Bristol and also the town of Warren are furnished with water.   It also alleges that the water supplied by the defendant is of inferior quality and insufficient in amount and in pressure.   Both these allegations of default are denied in the defendant's answer.   On this point we think the master's finding that the water furnished is of reasonably good quality and ample in quantity in sustained by the evidence.   The bill,

however, does not insist upon such alleged failures of performance as grounds of cancellation of the contract and of forfeiture of the privileges granted by it, but prays that it may be ascertained what part of a system of water-works for the supply of the town of Bristol the defendant has power and right to convey and ought to convey under said contract and that the defendant may be compelled to convey the same to the town, and offers to pay a fair and reasonable price therefor.

The issues raised by the bill and answer as to the full performance of the contract were thus waived by the complainant, and it only remained to determine whether the whole or what part of the defendant's system could be conveyed to the town as reasonably necessary and useful for supplying water to the town and its inhabitants, and what would be a fair and reasonable price for the same.

These questions were referred to a master by decrees entered by consent of the parties, April 27, 1896, and May 23, 1896, and he filed his report April 7, 1900, to which both parties filed exceptions. After the hearing a supplemental report was filed by direction of the court, June 29, 1901, dividing into several items the gross sum which the master had reported.

The questions raised by the exceptions are whether the master has correctly enumerated the property and rights which ought to pass by this purchase and sale, and whether his estimation of values is correct.

His estimation is as follows :

"Lot of land on which is located the stand-pipe of the respondent, the wrought iron stand-pipe thereon, together with foundations, by-pass gates, connections, appurtenances, and appliances used or connected therewith................... $4,819 00

"Wrought iron, cement-lined pipe laid between the stand-pipe and the town line of Bristol and in the streets of the town, varying in diameter from one inch to thirteen inches......... 46,761 56

" Cast iron pipe laid in the streets of Bristol..    $491 00
" Three fountains............. .............    375 00
" Ninety-five hydrants......................    3,800 00
" Service pipes, stop cocks, gates, service boxes,
connections, fixtures, appurtenances or appli-
ances used or connected with the aforementioned
property....................................    11,600 00
" All the above are situated in the town of
Bristol, or between the stand-pipe and the town
line.
" Franchise for unexpired term of 37 years....    151,804 44
" Good will of plant......................    50,000 00
" Enhanced value due to the fact that the plant
is a running plant...........................    25,000 00

" Making a total of.................. ...... $294,651 00
" Taking from this $75,000.00 for damages on
account of the failure of Norman and his succes-
sor, Bristol and Warren Water Works, to carry
out the contract with the town of Bristol, there
is a balance of.............................$219,651 00

which I find is a fair and reasonable price to be paid by the
complainant for that part of the water works that it is en-
cumbent upon it to purchase in accordance with the terms of
the contract with Norman."

The master's method of arriving at the values he has
assigned for this property was ingenious.    He first decides
that only a part of the works ought to pass; then he esti-
mates the value of that part, taking the cost of reproduction
less depreciation of the physical plant, adding arbitrary sums
for adaptation and good-will, and estimating the value of the
franchise as if the elements considered constituted a complete
plant, and then deducting an arbitrary sum as damages be-
cause the plant, as he constitutes it, is not complete.

In considering his report it must first be observed that the
items of $50,000 and $25,000 credited and $75,000 charged
should be eliminated.    The subject of this sale consists of

1st, certain material things, the value of which is to be determined by the cost of reproduction less depreciation; and, 2nd, the right to use them in a certain business without competition for a certain time, the value of which right is to be determined by the probable profit of such use. The fact that the plant is a running plant and the probable retention of customers, which is what is meant by good-will, are elements which are included in the valuation of the franchise. A monopoly has no good-will, for its customers are retained by compulsion, not by their voluntary choice. The laying of the pipes in their actual position adapted to the use to be made of them is the result of skilled labor, and the skill of arrangement, as well as the labor of laying and material, are all comprehended in the actual cost. So the assessment of damages for non-fulfillment of the defendant's contract is a matter entirely outside the scope of the master's duty or the province of the court in this case. To recover such a claim would require a different proceeding from the present suit.

As the elimination of these sums, equal on both sides of the estimate, does not change the result, we need only mention them and pass on to the radical issues in the case.

Has the master included in his estimate all the property and rights which should be included in the sale and purchase?

He has reported two lists, one of property and rights which he says the defendant can sell, and another of certain items which he says it is incumbent upon the complainant to buy. (2) We think he was led into error in this regard by the uncertain frame of the bill and the language of the decree. The bill asserts again and again that the defendant has not constructed a complete system of water-works for the supply of the town of Bristol and offers to buy of the defendant a complete system or such part of the system as can be made useful by the town of Bristol for its water supply. Now under the subsisting contract and the vote of the town the town of Bristol is not obliged to buy anything less than a complete system. It is only by virtue of its offer contained in the bill accepted by the defendant's answer that it is

obliged now to purchase anything less.    If the defendant can sell the town a complete system, the town, having claimed the option in the contract, is bound to buy that.    If the defendant cannot sell a complete system but has portions of a system available to the town which it can sell, then, by the offer of the bill and the acceptance of the answer, not by the contract, the town is bound to take and pay a fair price for that.    And here again it may be observed that if the master takes the latter view of the facts, as he has done, there is no place for damages for non-performance of the contract.    A consent to buy part is a waiver of damages for not getting the whole.    In either case, what the defendant can sell and what the complainant should buy are identical.

(3)    The idea is strenuously urged by the counsel for the town that the system of water-works now operated by the defendant for the supply of the town of Bristol is not complete because its reservoirs are used as a source of supply by the works which supply the town of Warren also, and because the town of Warren might resume certain rights appertaining to a portion of the land enclosed in the Kikemuit reservoir, and the master adopts these views.    We think this finding is erroneous.

It is true that the defendant has included in the Kikemuit reservoir what was originally one-half acre of tide-flowed marsh at the outlet of the stream, and that certain rights in this marsh were claimed by the town of Warren, and the right to overflow the marsh and thus extinguish the use of these rights was made a consideration for certain obligations assumed by the defendant to the town of Warren; but we do not consider this half-acre an essential part of the defendant's plant.    It is in evidence that it may be excluded from the reservoir at an expense of $4,000.    If this were done, the town of Warren would have all the rights in the marsh which it had before.    As the land is all below high-water mark the fee is in the State, and the only private rights the town can have are such as may have been derived from the owner of the adjacent upland and may now be appurtenant to some other upland estate owned by the town.    The town has no

rights of riparian ownership on the river itself. The master is mistaken in holding that riparian rights and littoral rights are the same. Among the former, but not among the latter, is the right to have the stream flow in its natural volume and of its natural quality.

Such an impediment cannot be insuperable if the parties desire to sell and purchase the property.

It appears, however, that while the works must be considered complete as a plant, taking the water from its reservoirs and distributing it throughout the town, the reservoirs themselves furnish water also for the town of Warren, and hence cannot be said, in their entirety, to be included in the "water-works for the supply of Bristol with water" which Norman was to construct and which the town of Bristol was to have the option of purchasing.

The proviso contained in the agreement between Norman and the town of Warren that in case that town should purchase he would provide it with a complete water-works "*independent of any other water-works or conflicting rights*" is not contained in the agreement with the town of Bristol. As the water-shed drained by the Kikemuit river seems to be the natural and most available source of supply for both towns and is ample for the requirements of both, it was wise and proper to use it for their common benefit so long as the company should serve both towns; but we cannot consider it incumbent upon the complainant, either under the contract or under the offer in the bill of complaint, to purchase this whole water-supply which is so much beyond its need and which was constructed and is used in a large measure for another town's consumption.

It seems to us that the ownership of one of these reservoirs, with the right to detain and divert the water so far as may be needed, or the right to take from one of the reservoirs either a certain quantity of water or a certain fractional part of the natural supply, without the acquisition of ownership of the reservoir itself, or some divided part either in ownership or use of the reservoir, might be set out as part of the property to be acquired by the town, and the defendant be

left with ample facilities to carry out its contract with the town of Warren.

The case must therefore go back to a master to apportion the reservoirs or water-rights and to estimate the value of the whole plant including these items, and the pipes, engines, and appurtenances between the reservoirs and the stand-pipe.

(4) Another important question raised by the exceptions to the master's report is whether or not, in estimating the price to be paid by the town for the property to be conveyed, the exclusive right to maintain water-pipes in the streets and highways for the remainder of the term of fifty years ought to be included.

There is no question of the right of the town to grant such a franchise conditionally or unconditionally. Pub. Laws, cap. 566, in force at the time the contract was made, gave such a power to any town. Neither is there any question that the water-works have the power to sell and convey this franchise if it was given, for when granted it was given to George H. Norman, his heirs and assigns. The question is, was it given absolutely for fifty years or absolutely for ten years and so much longer as the contract to furnish water should continue? The answer to this question is to be found in the words of the contract which the parties made. The terms of the contract are contained in the proposal of Norman and the vote of the town. Norman offers to do certain things provided the town will grant him the exclusive right and also the use of the water-pipes belonging to the town, both for fifty years, for the purpose of selling water therefrom.

The town council voted as follows : "Voted and Resolved : That said proposition be and hereby is accepted, and the exclusive right to use the public streets, lanes, and squares of the town for the purpose of laying water-pipes and continuing the same therein, and of using said streets, lanes, and squares for the purpose of making the necessary alterations and repair in said pipes for the period of fifty years, is hereby granted to said Norman for the purpose of selling water therefrom, and the use of all water-pipes now owned by the

town is hereby granted to said Norman for said term of fifty years, or until the town shall avail itself of the privilege reserved herein to buy said water-works."

Thereupon Norman, in consideration of the above agreements, &c., covenanted and agreed for himself and his assigns on his part to execute faithfully all the terms and conditions contained in his proposition to the town council "as qualified and added to by the acceptance of said town as contained in the foregoing vote of the said council thereof."

The grant which was made by the town and accepted by Norman was not the grant which he asked for, but that grant as modified by the town itself. The alteration of this language by the town is very significant. He asked for an exclusive right and privilege and the use of the existing pipes for a term of fifty years; they gave him in separate sentences the exclusive right to lay pipes for the term of fifty years and the use of the existing pipes for said term of fifty years or until the town should buy the water-works. Language could hardly be plainer than this to annex a new limitation of time to the grant of the use of the pipes and to exclude the application of the limitation to the grant of the exclusive right to use the streets. The exclusive right is given for fifty years, the right to use the pipes is for fifty years or until the town shall elect to purchase.

The condition reserving a right to purchase does not in any manner qualify or limit the terms of the grant any more than the condition of a mortgage affects the description of the land pledged. The whole concession was made subject to an option in the town to purchase, but it is by virtue of the description in the grant that the right to use the pipes terminates when that option is exercised—not by any other clause in the agreement.

To this grant were annexed two conditions affecting the duration of the exclusive right. One was a provision for a forfeiture : "that said grant of the right to use the streets and public places for laying, continuing, repairing, and altering pipes shall cease to be exclusive whenever said grantee shall cease, neglect, or fail to supply water in reason-

ably sufficient quantity through all the pipes connected with said water-works, or with water not suitable for the purposes aforesaid." If the town had proceeded under this clause to enforce its provisions, and had established the default of the grantee, it would have taken from him without compensation his exclusive rights in the streets and the use of the pipes owned by the town, and left him a right to use his own pipes as before to the end of the term of fifty years, and would have resumed the right, either by itself or any other person or corporation whom it chose, to carry on the business of supplying the inhabitants of the town with water in competition with the grantee or his assigns. The other was a provision reserving to the town an option to purchase in the following words :

"And that the town may at its option purchase the said water-works and all the pipes, reservoirs, and appurtenances connected, used, or belonging therewith at any time after ten years and within fifteen years herefrom for a fair and reasonable price."

The *res* to be bought by the town under this option is exactly what would be the subject of purchase by a third party who should offer to buy of the defendant the Bristol water-works. It comprises the material plant and the rights possessed by the defendant and exercised in the use of the material plant. If the sale were to be made to some third party, could it be doubted that it would include the franchise derived from the town as well as the engines, pipes, and other property purchased elsewhere ? The town has the option to buy, not to extinguish, the rights they have given, which together with other property and rights make up what the defendant owns. Everything which the defendant can sell to another he can sell to the town. A fair and reasonable price to the town is what would be a fair and reasonable price to any one else.

The franchise, therefore, which would have been reduced in case of forfeiture from an exclusive one to a mere privilege, which the town might make common to others, is left

in case of purchase as a part of the property and must be considered in estimating its value.

From what has been said it follows that the exceptions taken to the master's report shall be disposed of as follows:

The complainant's first, second, sixth, seventh, eighth, ninth, twelfth, thirteenth, fourteenth, fifteenth, and eighteenth exceptions are overruled. The complainant's third, fourth, and fifth exceptions are immaterial to the true issues in the case and are hence overruled. The complainant's tenth and eleventh exceptions are sustained.

The questions involved in the sixteenth and seventeenth exceptions will be reserved until further report from the master, when they can be finally considered.

The respondent's first, second, third, fourth, and fifth exceptions are sustained. The sixth is overruled in so far as it holds that it is incumbent on the complainant to purchase the whole of both reservoirs, and sustained in so far as it holds that the obligation to purchase is not confined to items one to nine in the inventory.

The question raised by the defendant's seventh exception is the same as that raised by the complainant's seventeenth, and is reserved until the case comes again before the court.

The case will be referred again to a master, under instructions in accordance with this opinion.

*Comstock & Gardner*, for complainant.

*Arnold Green*, for defendant.