THE GALENA WATER COMPANY V. THE CITY OF
GALENA.

No. 14,917.   (87 Pac. 735.)

SYLLABUS BY THE COURT.

1. CONTRACTS—*Franchise—City Water-works—Option to Pur-
chase—Election by the City.* A city granted a franchise to a
water company to construct and operate a system of water-
works for such city during the term of twenty years, re-
serving the option to purchase the plant at the end of fifteen
years at its fair and equitable value. It was provided that,
if the city should elect to make the purchase and the parties
were unable to agree upon the price, the question might be
submitted to the district court for determination. At the end
of the fifteen years the city duly elected to purchase the plant,
and, the parties being unable to agree upon its value, the
question was submitted to the district court for decision.
*Held,* that the contract of purchase was complete when the
city made its election, and the conveyance of the property,
when executed, will relate back to that time, and the rights
of the parties should be adjusted as of that date.

2. ——— *Determination of Value—Going Concern—Unexpired
Franchise.* Where a city exercises its right to purchase a
system of water-works which is established and in operation
in such city, and is required to pay therefor a fair and equit-
able price, if the parties cannot agree as to the amount of
such purchase-price and the determination thereof is sub-
mitted to a court the fact that such plant is an established
system in operation, and has an unexpired franchise, should
be considered as elements of value in such determination.

Error from Cherokee district court; WILLIAM B.
GLASSE, judge.   Opinion filed November 10, 1906.
Modified.

STATEMENT.

ON April 6, 1889, the city of Galena, by ordinance
No. 61, granted to what is now known as the Galena
Water Company the right to construct and operate a
system of water-works in that city.   Section 1 of such
ordinance reads:

"That Adam H. McCormack, his associates or as-
signs, are hereby granted the right to construct, main-

tain and operate and own a system of water-works in the city of Galena, Cherokee county, Kansas, to supply said city and its inhabitants with water suitable for domestic and fire purposes. . . . Said grantees to have the right to maintain, establish, construct and operate said works, as herein specified, for a term of twenty (20) years from the date of completion of said works, unless such rights shall sooner terminate, as hereinafter provided, by purchase or otherwise, and continue to use and operate said works as hereinafter provided."

The city reserved the privilege of purchasing the water-works system by sections 10, 11 and 12 of the ordinance, which read:

"Sec. 10. The city shall have the right to purchase said water-works and appurtenances at the expiration of fifteen (15) years from the date of commencement of hydrant rental, at their fair and equitable value, which shall be placed at the actual value of the works, lands, buildings, machinery and equipments, including the franchise hereby granted. Such value (in case the parties cannot agree) to be determined by arbitration as provided by statute, or if that method is not satisfactory, then by the district court of Cherokee county, as other questions of fact. Any delay in such proceedings not to forfeit the right of the city to make such purchase. And any encumbrance on said works at the time of purchase shall be assumed or paid by said city, provided said encumbrance does not exceed the purchase-price.

"Sec. 11. If the city shall fail to purchase at the end of fifteen (15) years, it shall then have the same rights under the same conditions at the end of twenty (20) years.

"Sec. 12. At the expiration of twenty (20) years, if the city is not the owner of said works, the grantees shall have the right to maintain and operate the same continuously, the city then having the right to purchase at the expiration of every five (5) years thereafter, and having the right to continue to use the fire hydrants upon such terms as may be then agreed upon, but under no circumstances at a greater price than that stipulated in this ordinance."

Afterward the company constructed its system of water-works, which was completed and in operation August 1, 1889, from which date the twenty years during which the franchise continued began to run. August 1, 1904, the city duly elected to purchase the water-works system under the provisions of the ordinance. The parties being unable to agree upon the value of the plant, the city of Galena, on September 26, 1904, filed a petition in the district court of Cherokee county, as provided by the above-mentioned ordinance, for the purpose of obtaining a decree fixing such value.

On September 20, 1905, the issues were referred to Hon. S. H. Allen, with instructions to take testimony and report findings of fact and conclusions of law. The principal controversy before the referee was whether or not the unexpired franchise granted by the city to the water-works company, and the fact that the plant was an established and going concern, should be considered in determining the fair and equitable value of the water-works system within the meaning of the ordinance. The city insisted that nothing should be considered outside of the actual cost of construction, less the depreciation by use and decay. The referee found and returned these two items of value separately, so that the controversy could be finally adjusted without the necessity of another trial. The value of the property on August 1, 1904, in its entirety, was fixed at $75,400. The value of the plant as a going concern, including the franchise, was fixed at $15,214.73.

December 21, 1905, the district court entered its decree upon the report of the referee, in which it found that the fair and equitable value of the plant was $60,185.27, being the amount found by the referee, less the $15,214.73; that the property was encumbered with a mortgage of $40,000, bearing interest at six per cent. per annum; that when the city elected, on August 1, 1904, to purchase the water-works system,

Water Co. v. Galena.

it then became entitled to the property, and that since that date the company had operated the plant and received the profits thereof. The court decreed that the city should pay to the company the sum of $20,185.27, with interest thereon from August 1, 1904, being the date of purchase, at the rate of six per cent. per annum until paid; and that it should also assume and pay the encumbrance of $40,000, with the interest thereon from August 1, 1904. It was further decreed that the net profits arising from the operation of the plant since August 1, 1904, until final payment by the city, should be regarded as a credit to that extent on the purchase-price of the property.

*Edward E. Sapp,* and *Henry C. Solomon,* for plaintiff in error.

*Sapp & Wilson, A. L. Majors,* and *S. C. Westcott,* for defendant in error.

The opinion of the court was delivered by

GRAVES, J.: The plaintiff in error insists that the district court erred in the manner specified in each of the sixty-nine assignments of error, but for the sake of reaching an early decision upon the more substantial questions involved in the controversy it waives all of these errors except the findings upon the value of the property, the time when the sale became operative, and the adjustment of the purchase-price. We have, therefore, confined our examination of the case to these questions.

We think the district court erred in excluding from its estimate of the "fair and equitable" value of the water-works system the sum of $15,214.73, that being the amount found by the referee to be the value of the plant as a going concern, including the franchise. A system of water-works in a city, without the right to operate there, or without being connected with water takers, and not in a running condition, would be com-

paratively worthless. The water company was the owner of these important elements of value, and it seems reasonable that they should not be taken without compensation. Section 10 of the ordinance by which the franchise was granted to the water-works company, in defining the meaning of fair and equitable value, says: "Which shall be placed at the actual value of the works, lands, buildings, machinery and equipments, including the franchise hereby granted." The parties evidently contemplated that the value of the plant should be fixed by the same standard that would be adopted if the purchaser were an outside party, instead of the city, in which case these elements would be included without question.

In the case of *Brsitol v. Bristol & Warren Waterworks*, 23 R. I. 274, 49 Atl. 974, the plaintiff granted a franchise to the defendant to operate a system of water-works in the city for fifty years, reserving the option to purchase the plant at any time after ten years and within fifteen years for a fair and reasonable price. The reservation as stated in the ordinance read:

"And that the town may at its option purchase the said water-works and all the pipes, reservoirs, and appurtenances connected, used, or belonging therewith at any time after ten years and within fifteen years herefrom for a fair and reasonable price." (Page 283.)

In construing this language the court said:

"The *res* to be bought by the town under this option is exactly what would be the subject of purchase by a third party who should offer to buy of the defendant the Bristol water-works. It comprises the material plant and the rights possessed by the defendant and exercised in the use of the material plant. If the sale were to be made to some third party, could it be doubted that it would include the franchise derived from the town as well as the engines, pipes, and other property purchased elsewhere? The town has the option to buy, not to extinguish, the rights they have given, which together with other property and rights make up what the defendant owns. Everything which the defendant

can sell to another he can sell to the town.  A fair and reasonable price to the town is what would be a fair and reasonable price to any one else." (Page 283.)

In the case of the *National Water-works Co. v. Kansas City,* 62 Fed. 853, 10 C. C. A. 653, 27 L. R. A. 827, an elaborate and exhaustive opinion was delivered by Mr. Justice Brewer, in which these questions are fully and clearly discussed.  Each of the parties in this case, and the district court in its opinion, quotes largely from Mr. Justice Brewer's opinion, and we adopt a part of it as expressing our view upon the matters therein discussed.  It reads:

"The original cost of the construction cannot control, for 'original cost' and 'present value' are not equivalent terms.  Nor would the mere cost of reproducing the water-works plant be a fair test, because that does not take into account the value which flows from the established connections between the pipes and the buildings of the city.  It is obvious that the mere cost of purchasing the land, constructing the buildings, putting in the machinery, and laying the pipes in the streets—in other words, the cost of reproduction— does not give the value of the property as it is to-day. A completed system of water-works, such as the company has, without a single connection between the pipes in the streets and the buildings of the city, would be a property of much less value than that system connected, as it is, with so many buildings, and earning, in consequence thereof, the money which it does earn. The fact that it is a system in operation, not only with a capacity to supply the city, but actually supplying many buildings in the city—not only with a capacity to earn, but actually earning—makes it true that the 'fair and equitable value' is something in excess of the cost of reproduction.  The fact that the company does not own the connections between the pipes in the streets and the buildings—such connections being the property of the individual property owners—does not militate against the proposition last stated, for who would care to buy, or at least give a large price for, a water-works system without a single connection between the pipes in the streets and the buildings adjacent?  Such

a system would be a dead structure, rather than a living and going business. The additional value created by the fact of many connections with buildings, with actual supply and actual earnings, is not represented by the mere cost of making such connections. Such connections are not compulsory, but depend upon the will of the property owners, and are secured only by efforts on the part of the owners of the water-works, and inducements held out therefor. The city, by this purchase, steps into possession of a water-works plant, —not merely a completed system for bringing water to the city, and distributing it through pipes placed in the streets, but a system already earning a large income by virtue of having secured connections between the pipes in the streets and a multitude of private buildings. It steps into possession of a property which not only has the ability to earn, but is in fact earning. It should pay therefor not merely the value of a system which might be made to earn, but that of a system which does earn." (Page 865.)

We think the district court was right in adjusting the rights of the parties as of August 1, 1904. The contract of purchase became fixed when the city notified the company that it had elected to take the plant and offered to close the transaction at once.

The proceeding to ascertain the value of the property was a mere formality, having nothing to do with the substance of the contract of sale. (*Water Co. v. Cherryvale*, 65 Kan. 219, 69 Pac. 176; *Caldwell v. Frazier*, 65 Kan. 24, 68 Pac. 1076; *Chadsey v. Condley*, 62 Kan. 853, 62 Pac. 663.)

The plaintiff in error insists that this is a misapplication of the law of relation, and inequitable in this case, as it requires it to remain in the charge and management of the business and account for the profits. The situation may be peculiar, but the city had the right under the contract to become the owner of the plant when it elected to do so. The purchase-price could not be paid until the amount thereof was determined in the manner provided by the ordinance,

and the possession of the property could not be changed until payment was made. This situation is the direct and natural result of the contract made by the parties, and must have been contemplated by them.

This application of the law of relation seems to be the only way fully to protect the rights of the parties and to carry out their agreement. The criticism of the plaintiff in error, therefore, is not well taken.

The district court is directed to modify its judgment so as to fix the fair and equitable value of the property at the sum of $75,400, on August 1, 1904, and otherwise adjust the other matters on the same basis as in its former judgment, and extend the time of payment by the city a reasonable time. The costs in this court are equally divided.

All the Justices concurring.