## DES MOINES WATER CO. v. CITY OF DES MOINES.

(Circuit Court, S. D. Iowa, C. D.    September 16, 1911.)

### No. 2,468.

1. WATERS AND WATER COURSES (§ 203*)—WATER COMPANIES—RATES—LEGALITY OF RATES FIXED BY PUBLIC AUTHORITY.

Rates fixed by a city council under legislative authority, to be charged by a water company, are presumptively reasonable and lawful; and the company has the burden of overcoming such presumption by showing by a fair preponderance of the evidence that the rates so fixed are not sufficiently remunerative.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 290–299; Dec. Dig. § 203.*]

2. WATERS AND WATER COURSES (§ 203*)—WATER COMPANIES—RATES—VALUATION OF PLANT.

In determining the reasonableness of water rates to be charged by a water company, fixed by public authority, a court must ascertain the value of the company's plant; and on that question both its original cost and prospective value may be considered, but only as factors to be taken into account with other evidence.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 290–299; Dec. Dig. § 203.*]

3. EQUITY (§ 409*)—REPORT OF MASTER—WEIGHT GIVEN TO FINDINGS OF FACT.

When a case is referred to a master in chancery, he does not act simply as a commissioner to take evidence and report the same, but is a judicial officer, and must make findings of fact and adopt conclusions of law; and, while the latter are subject to review by the court, the finding of facts stands as the verdict of a jury, and cannot be overthrown, unless clearly erroneous.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 920–923; Dec. Dig. § 409.*]

4. WATERS AND WATER COURSES (§ 203*)—WATER COMPANIES—RATES—VALUATION OF PROPERTY—GOING CONCERN.

The plant of a water company should be given a higher valuation for rate-fixing purposes, if the company is a going concern, with patrons already secured and connections made.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 290–299; Dec. Dig. § 203.*]

5. WATERS AND WATER COURSES (§ 203*)—WATER COMPANIES—RATES—REASONABLENESS.

In determining the rate of income which a water company is entitled to earn on the value of its property, the hazards to which it is subject,

---

such as the shortness of the term of its charter, its liability to the enforced sale of its plant to the city through condemnation proceedings, etc., may properly be taken into consideration.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 290–299; Dec. Dig. § 203.*]

6. WATERS AND WATER COURSES (§ 203*)—WATER COMPANIES—RATES—REASONABLENESS OF RATES FIXED BY CITY.

A water company in Des Moines, Iowa, *held* entitled to earn dividends equal to 8 per cent. on the value of its plant, in view of the hazards of the business and the current rates of interest in the state; and an ordinance fixing rates under which it could not earn anything near such returns *held* unreasonable and confiscatory, and its enforcement enjoined.

[Ed. Note.—For other cases. see Waters and Water Courses, Cent. Dig. §§ 290–299; Dec. Dig. § 203.*]

In Equity. Suit by the Des Moines Water Company against the City of Des Moines. On final hearing. Decree for complainant.

N. T. Guernsey, A. C. Parker, and Wm. E. Miller, for complainant. Robert O. Brennan and J. M. Parsons, for defendant.

SMITH McPHERSON, District Judge. This is a case involving the validity of an ordinance of the city of Des Moines, fixing water rates. , The Water Company filed a bill in equity to enjoin the enforcement of that ordinance, alleging that the same is invalid, because unremunerative as to the rates thus fixed, as well as for, other reasons, to be noticed in this opinion. It is now more than three years since the passage of this ordinance. This case illustrates the evils in connection with the fixing of rates by municipalities to govern public utility corporations. Neither party is properly chargeable with any dereliction, and yet the fact remains that by the time this case is decided by an Appellate Court at least four years will have elapsed from the passage of the ordinance until the matter is put at rest by the courts. It is utterly impossible for a court to hear all cases similar to this, which requires from one to three months to hear the evidence, after the issues are formed. If this court were to do nothing else, it could not personally hear all such cases. The Supreme Court of the United States has said that the seemly and orderly way to determine these matters is to refer them to a master in chancery, to take the evidence and make reports on which the courts can act.

In the face of these long delays and the tremendous expense attending the hearings, it is apparent some other method must be devised to determine the matters as to some of these public utilities. One of these schemes has been validated by the decision of the Supreme Court of Iowa in the case of Halsey v. City of Belle Plaine, 128 Iowa, 467, 104 N. W. 494, in which the law is now said to be that cities can constitutionally go in debt at least three times the amount that they could incur until that case was decided, in the year 1905. The state Constitution provides that no municipality shall create an indebtedness of more than 5 per centum of the valuation of the property within the city limits. Until the case just noted was decided, this 5 per centum of valid indebtedness was limited to 5 per centum of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

values on which taxes were paid. But under the decision just noted this 5 per centum is figured on the actual value of the property, which is four times that on which the taxes are paid. I am neither indorsing nor denying the correctness of that decision. But when the Supreme Court of the state has construed the statutes or Constitution of the state, and such construction is given before the existence of any of the facts in litigation may arise, then United States courts will adopt such construction, regardless of what may be thought as to the soundness thereof.

The Iowa Legislature has enacted a statute, chapter 45, Laws of the Thirty-Third General Assembly (1909), which provides for the condemnation and taking over of waterworks, and the city, as a city, becomes the owner of such plants. The value thereof is ascertained by three district judges, designated by the Supreme Court of the state, and the owners of the plant are compelled to part with the ownership upon receiving the value thereof from the city. Under the construction of the Iowa Constitution above referred to, the city can go into debt to raise the money and become the owner. The city can borrow the money at a less rate of interest than can a private corporation. When the city becomes the owner of the plant, all these litigations will be at an end. It may be that the people will not be better served, but the wranglings and disputes will be between the city officers and the people. If proper service is not given, the people can only complain of their own officers. It may be that property owners will pay more for their water, including their share of interest, than they would pay to a private corporation. But this will be largely compensated, when counting the expenses of litigation, and the unending quarrels that follow the present method of having private corporations to operate waterworks plants. It may be that the waterworks company will not be able to receive all of their investments back. But, considering the limitation on their franchises, and the difficulties now encountered to get money with which to build waterworks plants, it is better that they charge off their losses and bring present methods to a conclusion.

The present expensive chaos should be brought to an end. It is known by all informed men that city councils necessarily adopt rates with but little or no investigation as to what rates ought to be fixed. The result is that we have ordinances fixing rates based upon but little intelligent effort for the ascertainment of the facts. Some of the states, like New York, Massachusetts, and Wisconsin, have state commissions of competent men, who give public hearings, and who do nothing behind doors, nor in secrecy—a commission with no member interested as a taxpayer of the city, and with no member subject to influences other than the ascertainment of the truth and the facts. Rates are thus fixed with which most fair-minded people are ready to acquiesce. It is strange that we have no such legislation and no such commissions in Iowa.

Either of the foregoing suggestions would largely cure present evils. But the existing situation is such that city councils have the lawful right to fix rates, provided, always, that such rates are reasonable. And when the rate is thus fixed by a city council, the waterworks cor-

poration has the right to challenge such rate by a suit in equity in the courts. Such is this case. This case was referred to a competent, efficient, and learned master in chancery. He has found that the rates fixed by the city council of Des Moines are not reasonable rates. Exceptions to this report have been filed, and are now to be decided by this court.

[1] There are some matters of law now no longer the subject of serious debate. One of these propositions is that the rates thus fixed by a city council are presumptively correct, and the waterworks corporation, challenging the same, must overcome such presumption, and must affirmatively show by a fair preponderance of the testimony that the rates thus fixed are not sufficiently remunerative.

[2] Another proposition is that in this court, in arriving at a conclusion as to what rates are lawful, we are to have ascertained the value of the plant. The question is not what it cost, although such evidence is admissible as having a bearing. The question is not what the plant some day may be worth, although evidence with reference thereto may be considered as having a bearing. The question is: What is the value of the plant to-day? There must be a reasonable rate of interest or dividends allowed on the value of the plant. If a concern is not profitable, the investors must lose their money. If the plant is a profitable one, then such profits cannot exceed a reasonable rate of interest or dividend. As, of course, from this time henceforth, capital cannot be acquired, except with difficulty, and oftentimes not at all. In most enterprises persons are willing to invest their capital, if by so doing they can have a chance to acquire large profits. But if such investors must sustain all the loss, if there is a loss, and only a reasonable rate of interest or dividend, if successful, it is nearly impossible to find capitalists ready to furnish the money. But with that this court has nothing to do, other than to follow the rules now adopted by the Supreme Court.

[3] Another thing to be kept in mind is that, when a case is referred to a master in chancery, he is not simply to act as a commissioner, to take the evidence and report the same. He is a judicial officer, and must make findings of fact and adopt conclusions of law. Without question, his conclusions of law are subject to review by the courts, just as a conclusion of law by this court will be reviewed by the Supreme Court. But the master must also make findings of fact, and these findings of fact must stand as the verdict of a jury in an action at law. Before overridden, they must appear to be clearly erroneous. They must have weight. If this is not so, it is folly for the courts to appoint masters to make such findings.

The master makes some findings in favor of the city, but on the whole case his findings are adverse to the city. The ordinance in question is assailed by the waterworks company as being invalid, because it requires statements under oath as to the real estate owned by it, the number of miles of main pipes, number of fire hydrants, the cost of the system, as well as many other things.

As I view this matter, an expression of an opinion on my part would be dictum, and it would throw no light upon the real question at issue

herein. If it be assumed that those features of the ordinance are void, the conclusive answer thereto is, so far as this case is concerned, that such provisions can be eliminated, and it can then be said that the probabilities are that the balance of the ordinance with reference to rates would have been passed. The valid and invalid provisions can be separated, under the familiar rule, which need not be discussed, and for which authority need not be cited.

The great and substantial question of fact, in this case, is as to the value of the plant. What a plant cost originally is not the measure of value that courts must look to, to determine the validity or invalidity of rates. The value of stocks and bonds is no test, for obvious reasons, and mere theorists only, at the present day, insist upon such as the valuation. Practical men know that it is not the test. There can be no true test, other than the physical valuation, and to such physical valuation there may be added certain other items.

The master has made one finding that has been the subject of more discussion, perhaps, than any other item in the case. He finds that there are practically 38 miles of pipes that were laid in the streets at a time when the streets had not been paved, but that since the laying of those 38 miles of pipe the streets have been paved. To reproduce the same would require an expenditure of from $108,896, as admitted by the city, to $210,000, as claimed by the waterworks company, more than would be necessary to expend to lay such pipes in unpaved streets. Whatever the true sum is, the waterworks company claims such sum to be a part of the value of the plant. This proposition the city denies. But it is not pivotal in this case. Much can be said on each side of the question. This case seems to have been tried before the master, by both parties, upon the reproduction theory; that is to say, what this plant would cost if it were blotted out of existence, and the city, or some other company, were to undertake to reproduce the plant. In such an event, as of course, the pipes must be laid under these 38 miles of paved streets at this additional cost. Looking at the question in that light, the question is, What would it cost to-day to reproduce the plant? and from which, to get at the value of the present plant, there would be deducted the value of depreciation, either by functional or physical depreciation. Looking at the question from the other standpoint, the earning power is no greater, nor no less, in one case than in the other, and from that standpoint it is not material whether the streets are paved or unpaved. Much can be said that the true value of the property is measured by its earning power. But these figures as to extra cost of laying pipe under pavements can be eliminated, and the result in this case not changed.

[4] The master has found and fixed a valuation upon this property, as a going concern, as distinguished from the naked plant. As to this, both reason and authorities sustain him. Everything of a business character is thus valued. The peanut or news stand on the street corner, the trunk line railroads and the street railroad systems, the city and the village stores, the newspapers, the carriages for hire in the cities, dairies, bus lines, and every conceivable business

proposition, has a greater value when the business is established, and it is set going, over and above what such value would be when but ready for operation. A telephone system may have its wires, but before the business can be profitable it must have patrons. It takes effort and money to get patrons. While obtaining patrons, the capital stock is earning but little or nothing. The street car system may have laid its rails and built its power plant, and have bought its cars; but it does not have the value that it afterwards will have when its business has been adjusted, and the people have adjusted their business and their conveniences to work in harmony with the system thus established. The newspaper plant may have its editors and reporters, and its presses, buildings, and offices. The physical valuation in the one case is just the same as in the other. But two newspapers, possessed of equal physical valuation, are not of the same value, as everybody knows. Two merchants may have the same stock of goods, as to value, and may be equally well located, and may own the same amount of real estate, in value. It is not material whether we call it "good will" or the "value of a going concern," but there is an intangible value there, and the owner has the right to have it determined on such increased valuation.

These rules apply with equal force to a waterworks system. It took a long time to build up the system. First, it had to get in touch with patrons, make contracts, install meters, and establish the business. During that period the capital stock was not earning what it should have earned. Now that it is a going concern, it is entitled to have these values considered, in arriving at the true valuation of the plant. Such reasoning is indorsed by courts, both national and state Supreme Courts, and such conclusions are the result of sound reasoning. Such are the tests in all other vocations and business enterprises.

[5] The waterworks company claims that certain other specific things, by name, should be allowed, either by way of enhancing the value of the property, or that which would be the same thing, by calling them hazards, and allowing such rates as would produce a reasonable revenue thereon. One of these is the fact that rates are subject, at any time, to change by the city council, subject to local prejudice, and without experience or training with reference thereto; the hazard that the city, at any time, can force an involuntary sale by proceedings of condemnation; the fact that the franchise cannot extend beyond 25 years, with no assurance that it will be renewed; another competing plant may be allowed; the city may establish a competing plant; and other minor hazards.

There can be no question but that some of these matters should be given consideration. The greater the hazard, the higher the rate of interest. A farmer who observes his contracts and pays his debts can get a loan at a low rate of interest by a mortgage on his farm. A man whose credit is not good, and who can only tender security of a doubtful character, must pay a high rate of interest. This has always been so, and always will remain so. The fact that the company's charter may be revoked by a forced sale, or that it may expire

at the end of 25 years, and that it will be continuously kept in litigation, are all hazards, which in other business enterprises would increase the rate of interest that the borrower must pay, and justly entitles it to a higher rate of earnings than if its earnings were certain and fixed, and were in perpetuity or of long duration. But it is well-nigh impossible to point out just what particular hazard, and to what extent such a particular hazard, will increase the rate of interest, or will entitle it to a higher rate of earnings.

[6] From the most exhaustive reading and consideration of the voluminous record in this case, a record of many thousands of pages, I not only cannot say that the findings of the master as to the value of this water plant have not been fairly stated by him, when he states that it is worth not less than $1,840,000, in round numbers, and perhaps, that it is worth something like $15,000 in excess of that; but I think that the master has been conservative in fixing this valuation. It can be well said that, if he is in error, it has been by an undervaluation.

Taking into account the expenses of approximately $122,000 per year, the reduction proposed by the new ordinance would make the plant unremunerative to the extent that it is entitled to receive, considering the fair value of money in a state like Iowa. And, considering the hazards and liabilities, some of them certain and others contingent, and some of them destructive, an 8 per cent. return is moderate. But this proposed ordinance would allow nothing like 8 per cent.

All fair-minded people should readily agree, and the defendant city and its officers ought to agree, that reasonable returns should be allowed to not only these investments, but these dangers and hazards, which clearly are to be taken into account, under the authorities. Some of the leading cases which support the foregoing are the following: City of Omaha v. Omaha Water Company, 218 U. S. 180, 30 Sup. Ct. 615, 54 L. Ed. 991; National Waterworks Company v. Kansas City, 62 Fed. 853, 10 C. C. A. 653, 27 L. R. A. 827; Spring Valley Co. v. San Francisco (C. C.) 124 Fed. 574; Kennebec Water District v. City of Waterville, 97 Me. 185, 54 Atl. 6, 60 L. R. A. 856; Brunswick, etc., v. Maine Water Co., 99 Me. 371, 59 Atl. 537; Gloucester Water Co. v. City of Gloucester, 179 Mass. 365, 60 N. E. 977; Norwich Gas & Electric Co. v. City of Norwich, 76 Conn. 565, 57 Atl. 746; Galena Water Co. v. City of Galena, 74 Kan. 644, 87 Pac. 735; Newburyport Water Co. v. City of Newburyport, 168 Mass. 541, 47 N. E. 533; Town of Bristol v. Bristol Water Works, 23 R. I. 274, 49 Atl. 974; Willcox v. Consolidated Gas Co., 212 U. S. 19, 29 Sup. Ct. 192, 53 L. Ed. 382. The foregoing authorities sustain the foregoing holdings.

The exceptions, both of the city and of the waterworks company, are all overruled. The report of the master is confirmed, and there will be a decree enjoining the enforcement of the ordinance in question.