[No. 3905.]

PUEBLO WATER COMPANY v. THE CITY OF PUEBLO ET AL.

CONTRACT—*Municipal Corporation for Purchase of Water Works—Construed.* Plaintiff, the owner of certain water works, proposed to the City of Pueblo to purchase its plant, "said city to assume the outstanding bonded indebtedness," the amount of which was specified, the city council to accept the proposition "by resolution, thereupon the same shall become a binding contract * * * subject only to approval by a vote * * * at a special election called for that purpose." The city, by resolution, accepted the proposition, with the same proviso. An election was thereupon called and held, pursuant to the provisions of the statute (Rev. Stat., secs. 6803-6816); the proposition was approved, and the transaction was concluded, and a deed executed, some three months after the acceptance of the proposition by the city. Meantime, interest had accrued upon the bonded indebtedness, and it was claimed by plaintiff that by the resolution of the city council accepting the proposition of sale, the city became the equitable owner of the plant, and was therefore subject to the ordinary incidents and burdens of that relation, and liable for the interest subsequently accruing upon the bonded indebtedness. *Held* that the proposition of sale, and the acceptance thereof, were preliminary and provisional merely, made in contemplation of the provisions of the statute under which the matter was submitted to the people, that the provisions of the statute entered into and became part of the project, that nothing was or could be concluded until these were complied with, and that no title, legal or equitable, passed to the city until the conveyance was executed and possession delivered; that, therefore, defendant was not liable for interest accruing prior to such conveyance and delivery.

*Error to Pueblo District Court.* HON. J. E. RIZER, Judge.

Messrs. DEVINE & PRESTON and Mr. HENRY C. VIDAL for plaintiff in error.

Messrs. M. G. SAUNDERS and E. F. CHAMBERS for defendants in error.

MORGAN, Judge.

On October 25, 1906, the plaintiff, water company, commenced this action against the defendants, City of Pueblo, Public Water Works District No. 2, and Fraser, Ray and Covey as the Board of Water Works for said district, for the purpose of recovering an estimated amount for certain coal and other supplies which the water company had on hand at the time it conveyed its water works plant to defendant, city. After the complaint was filed, and probably before, a contention arose concerning the liability between the parties for the payment of the interest which had accrued between the date of the proposal to sell and the final transfer of the water plant on a certain bonded indebtedness which the city assumed and agreed to pay as part of the consideration. It was then stipulated and agreed that the defendants might pay the said interest without prejudice to their right to plead the same as a set-off against the amount claimed by the plaintiff. The defendants then paid the interest and in their answer pleaded it as a counter-claim, or set-off, as aforesaid.

The plaintiff stated in its complaint that the defendant district was created under the act of 1905, Sess. Laws 1905, p. 361, authorizing cities of 10,000 population, or over, to create water works districts for the construction, purchase or condemnation of water works; that prior to the creation of the district, under said law, the plaintiff made a written proposition, dated April 2, 1906, to the city of Pueblo to sell its water plant; that, on that date, and at the time of the creation of said water works district, the plaintiff was the owner of a certain water

works system and plant, that had supplied, and was supplying, with water, that part of the city of Pueblo in which the district was created; that after said written proposal to sell had been acted upon by the city, the water works district was created, a deed was given by. the water company to the city for the plant, and everything concerning the sale was closed, on or about the first day of July, 1906, three months after the written proposal was made.

The sole question to be determined herein is, whether the grantor, water company, or the grantee, city, under the law and the facts, should pay the accrued interest on the bonded indebtedness between the date on which the proposition of the sale was made and date when the property was transferred; that is between April 1st and July 1st, 1906; no *specific* agreement having been made as to who should pay it, except that, in the proposition of sale and in the acceptance thereof by the city and the deed which the water company gave to the city, it was stated that the city should assume the bonded indebtedness of $468,000 of the water company, and, in the deed. it agreed to pay it.

The only way to determine this question is to examine the evidence and ascertain, if possible, the intention of the parties, under the law and the facts, and apply the law as it may be found applicable thereto. In the written proposal of the water company the price was $1,000,000, reserving the capital stock, books, cash on hand, water rates at the time the plant should be turned over to the city, and all other assets not a part of, or used in connection with, the plant; the city to buy the coal and other material and supplies on hand when the plant should be turned over, and pay for the same, in addition to the $1,000,000. The written proposal is set forth in the complaint and contains the following:

"Said city to assume and agree to pay the present

outstanding bonded indebtedness of the water company, which amounts to $468,000." * * *

"The city council of said city shall accept this proposition by resolution, thereupon the same shall become and constitute a binding contract for the sale and purchase of said water works and property at the price and conditions herein set forth, subject only to the approval thereof by a vote in favor of such purchase and terms by the majority of the legal votes cast at a special election to be called by the city council for that purpose."

After this proposition was made, the council adopted a resolution containing the following:

"That said proposition of said water company be and the same is hereby accepted for and in behalf of the city of Pueblo; and it is hereby agreed that the city of Pueblo will purchase said water works system and plant, for the use and benefit of that portion of said city lying south of the Arkansas river, upon the terms and conditions set forth in said proposition, *provided* that a majority of the legal votes cast at the special election to be called for that purpose by this council, and to be held in that part of the city before mentioned, shall approve and be in favor of said terms and conditions."

Thereafter, on June 4, 1906, after the election was held, and the vote was canvassed and found to be in favor of such purchase, another resolution was adopted by the council containing the following:

"That the City of Pueblo has purchased, and it does hereby purchase and take, for the use and benefit of Public Water Works District No. 2 of the City of Pueblo, Colorado, being all that part of said city lying south of the Arkansas river as it runs through said city, the water works plant and property of The Pueblo Water Company now established and existing in that part of said city embraced in said district, at the price and upon the terms and conditions expressed in said written propo-

sition of said water company, dated and filed with the
city clerk on the 2nd day of April, 1905, which proposi-
tion was, on April 9th, 1906, by resolution, duly adopted
and approved, accepted by this council for and in behalf
of said city, and it was by said resolution expressly
agreed that said water works plant and system would be
purchased by said city upon the terms set out in said
proposition, for the use and benefit of said Public Water
Works District No. 2, provided that a majority of the
legal votes cast at the special election called by this coun-
cil to be held on May 19, 1906, should approve and be in
favor of said purchase; which approval has been given
by such majority vote as hereinbefore recited, and said
purchase has now become a binding obligation upon both
parties to said agreement.'' The resolution then pro-
vided for issuance of bonds to pay for the plant.

On June 26, 1906, thereafter, a deed of conveyance
was accepted, conveying the property to the city, in
which the written proposition aforesaid was set forth in
full; said deed also contained the following in the haben-
dum clause:

''Free and clear of all former and other grants and
incumbrances of whatever kind and nature, save and ex-
cept a certain mortgage given to secure the payment of
bonds of the water company to the amount of $500,000,
of which bonds there now remain outstanding and un-
paid the sum of $468,000, which the said party of the
second part hereby assumes and agrees to pay.''

It is assumed in the argument of counsel that the
property was turned over to the city on July 1, 1906,
just three months after the proposition of sale was made.
Very soon thereafter, July 5, 1906, the council adopted
another resolution, accepting the deed, which contained
the following:

''That the said deed so tendered and delivered be
and the same is hereby accepted for and in behalf of the

city of Pueblo, for the use and benefit of said Public Water Works District, as and for the full performance and compliance by said water company with the terms and conditions of its said proposition;" the resolution thereafter providing for the issuance of bonds necessary to pay the balance of said consideration over and above the debt assumed, and for the purpose of authorizing the issuance of bonds to pay off the debt that was assumed.

It is contended by the plaintiff, water company, that the proposition was *unconditional,* and, upon its acceptance, a binding contract existed, and that, under the circumstances, the purchaser became the *equitable owner* and thereby subjected to the ordinary *incidents* and *burdens* of such binding contract; and, therefore, that defendants are liable to pay the interest from April 1 up to July 1 on the indebtedness assumed. The water company, it seems, paid the semi-annual interest that became due on April 1, which was the day before the written proposition was made, and nothing was said about payment of interest falling due on the following October 1, until the latter date, or until this suit was commenced. Defendants concede the law to be that, when a contract of sale is completed, the equitable title passes to the vendee, but contend that the aforesaid facts and circumstances do not justify its application until *after* the *purchase* and *sale* is *finally consummated,* contending that the negotiations, up to the final execution of the deed and transfer of the property, were *conditional* and *depended* upon the *creation* of the water district, and the *authority conferred by the special election,* upon such district, when created, to *purchase* and *pay for* the property, and that therefore the defendants are not liable for any interest on the debt assumed *prior* to such final transfer.

Plaintiff further contends that under the proposi-

tion of sale, itself, *aside* from the law transferring the equitable title aforesaid, the plaintiff is not liable for this interest, and calls attention to the words of the written proposition, to-wit: "The city to assume and agree to pay the present outstanding bonded indebtedness;" and contends that this *includes* the incidents of that indebtedness, and that *interest* is one of the *incidents*.

Plaintiffs further contend that defendants are liable under the *terms* of the *deed* and are *estopped* from denying liability by reason of the acceptance thereof in its resolution of July 5, aforesaid.

Defendants, to sustain the judgment of the lower court, maintain that the actual making of the purchase and sale under the negotiations were in contemplation of the law of 1905, and depended entirely upon the result of the special election creating the water district and authorizing the purchase aforesaid, and that, until such district was created and such authority given, no binding contract could be made; contending that the city council could do nothing permanent *prior* to such authority, and that its action upon the written proposition aforesaid in accepting it amounted to nothing more than to accept it as a *sufficient proposal to be submitted* to the voters, and contend that the statute expressly requires the question of whether a system *shall be purchased* shall be submitted to the voters, and that a proposition of purchase could not be submitted unless a proposal of sale is submitted with it, to the end that the voters may accept or reject it, and cite the following section of the law:

"The said board of water works shall have power *to enter into* all contracts, in the name of the district, and to do all things necessary to provide a system of water works for said district as provided by this act, and for the management, operation and control thereof."

The defendants then contend that, under the pro-

posal and resolution acting on it, and the deed of conveyance, the plaintiff should pay the interest. The defendants concede that interest is an *incident* to a debt, and that when defendant agreed to assume the debt such assumption included the interest subsequent only to the final transfer. Defendants then say that the proposition was that the city should assume the *present* bonded indebtedness, $468,000, on the date of the proposal, at which time no interest was unpaid, and that, as the deed so accepted contained this proposal and the assuming clause stated the same to be $468,000, that no greater sum could be inserted; quoting from *Cramer v. Lepper,* 26 Ohio State, 59, 20 Am. Rep., 756, as follows:

"As between Cramer and Lepper, the vendor and purchaser of the equity of redemption, we think the court of common pleas rightly construed the contract in holding Cramer to the payment of the interest which had accrued on the note and mortgage prior to April 1, 1869, the date of the conveyance. This construction is sustained in view of the fact that the amount of the mortgage debt assumed by Lepper is stated in the contract at $2,500, the principal of the note only; *and especially as the principal debt, excluding interest, fully and exactly, when added to other specific sums agreed to be paid, amounts to the sum agreed as the price to be paid for the mortgage premises.*"

In answer to the plaintiff's claim of estoppel, the defendants cite several authorities, to the effect that no estoppel arises, on the ground that "individuals as well as courts must take notice of the extent of authority conferred by law upon a person acting in an official capacity;" and that "no sort of recognition can make good an act without the scope of the corporate authority."

It is unfortunate that the interest that would necessarily accrue on the bonded indebtedness subsequent to the written proposal and prior to the final transfer of

property was not specifically mentioned in the proposal or in the acceptance, but it seems to us that defendants' contention is sound: that the proposal and the action of the council thereupon was preliminary, only, and made in contemplation of the law of 1905, and that the written proposal and the deed bind the plaintiff to pay all in-- terest on the bonded indebtedness up to the time when the city took over the property. It seems to us that, aside from the allegation in the complaint that the "plain- tiff was the owner at the time of the creation of the water works district," neither the equitable nor the legal title, under such circumstances, passed to the city until the deed was executed and possession delivered. The law under which the purchase and sale were made *entered into* and *became à part* of the negotiations, and, as no purchase could be made *until that law was complied with,* all negotiations must necessarily have been in contem- plation of, and subject to, such law; and that it was not the intention of the parties to consider that any sale was made *until* the *special election* was held, *authorizing* it, and the *property transferred* thereafter. The pro- posal and the acceptance, both, say subject to the major- ity vote at the contemplated special election, and provide for issuance of bonds thereafter, and the delay incident thereto; and say, further, that such proposal and accept- ance should be void if the majority vote should be against the proposed creation of a water district and the pro- posed purchase. Neither party was responsible for the necessary delay, directly, but both parties, contemplating the law of 1905, were compelled to *wait until such law was complied with before the sale could be made* and the bonds issued to complete it.

If it had been intended that the equitable title to the property should vest in the defendant city when the proposal was accepted, the resolution would not have contained the proviso and the words *"will* purchase:"

and the proposal would not have contained the words
"subject to the majority vote," etc., nor the provision
that "the property is to be conveyed and turned over
when said bonds (to be issued to pay for the property)
are ready for delivery." Furthermore, several other
matters would have been provided for; for instance:
interest on the balance of the purchase price in excess
of the amount to be assumed; the profits, over and above
expenses, during the interval, and necessary repairs in-
cident to a "going concern." The company might con-
tend that, as it reserved the income, it would be inferred
that it would pay expenses and keep up repairs, but the
proposal does not say so. It might say that it might be
inferred that the interest on the money invested would
be received by it in the water rates reserved, but this
would include the interest in controversy.

While the law is plain, as claimed by the plaintiff,
that when a valid contract of sale of real property has
been *consummated,* the equitable title becomes vested in
the vendee, yet the purchase and sale of the property in
this instance was *not consummated* until the deed was
accepted and the property delivered. All negotiations
were subject to, and dependent upon, the future culmi-
nation thereof under the law of 1905, thus providing an
insurmountable condition necessary to be removed be-
fore a sale could be made, and that could be removed
only by the special election and the issuance of bonds
thereafter.

Plaintiff cites *Water Company v. Galena,* 74 Kan.,
644, 87 Pac., 735, and contends that it is decisive of the
issues here, but the circumstances of that case are not
the same as this. In that case the parties, by ordinance
granting a franchise for twenty years with the right to
purchase at the end of fifteen years, had agreed upon
everything when the ordinance was passed, August, 1904,
except the price, which was to be determined as pro-

vided by the ordinance by agreement or through a proceeding in court. The parties could not agree and the court finally determined the matter December 21, 1905, and decreed that the city of Galena should pay the amount decreed, as of August 1, 1904, with interest from that date on the amount to be paid in cash, and that the city should assume a mortgage for the remainder and pay the interest on that from August 1, 1904; and *that the water company should allow the profits since that date to go to the city* as a *credit* on the *purchase price.* [Italics ours.] In the instant case the water company contends for the profits and interest also on part of the purchase price.

In that case it may be seen that it was the value alone that was not determined, while in the present case the very purchase itself had to be determined by the special election; and the written proposal aforesaid specifically provides that "property is to be conveyed and turned over when said bonds are ready for delivery," meaning the bonds to be issued to pay for the property. In that case the ordinance gave full power to contract and there was no condition in the way of the passing of title, but the allowance of all profits to the city is an element of the adjustment in that case upon an intention of the parties as to the passing of title exactly opposite to the clear intention here.

The conclusion is that the judgment of the lower court, that plaintiff should pay the interest in controversy, thus allowing the set-off, and giving judgment for the plaintiff for the balance due for the coal and supplies sued for, after deducting the amount of the interest, was correct, and hereby is affirmed.

Decided March 9, A. D. 1914. Rehearing denied April 13, A. D. 1914.